### HILL v. HAYNES.

1. APPEAL AND ERROR—DIRECTED VERDICT—GROUNDS.
    Where a directed verdict was asked upon two grounds, and it clearly appears that it should have been granted upon the first, it will be sustained by this court, although granted upon the second, without determining whether or not the court came to a correct conclusion with reference to the second.

2. MASTER AND SERVANT—SCOPE OF EMPLOYMENT—NEGLIGENCE—LIABILITY OF MASTER.
    An employee of a garage, who took a car left to be repaired, to go to his home for dinner, without the knowledge or consent of his master or the owner of the car, was not acting within the scope of his employment so as to render his master liable for damages caused by a collision between the car and a motorcycle while being so driven by said employee.

See notes in 1 L. R. A. (N. S.) 214; 9 L. R. A. (N. S.) 1035; 14 L. R. A. (N. S.) 216; 21 L. R. A. (N. S.) 93; 26 L. R. A. (N. S.) 382; 33 L. R. A. (N. S.) 79; 37 L. R. A. (N. S.) 834.

Error to Kent; Perkins, J. Submitted October 16, 1918. (Docket No. 57.) Decided February 7, 1919.

Case by Fred E. Hill against Ralph Haynes and another for personal injuries. Judgment for defendants on a directed verdict. Plaintiff brings error. Affirmed.

*Smedley & Linsey,* for appellant.

*Edward N. Barnard,* for appellee Haynes.

KUHN, J. The testimony taken on the trial of this case discloses that on and prior to June 2, 1917, defendant Haynes was operating a small garage on National avenue in the city of Grand Rapids, where cars were stored for owners and repairs made as desired. Defendant Haynes was absent from Grand Rapids on that day and the defendant Curren, who was employed in the work of the garage, was left in charge. One Conrad, who had a Chevrolet car stored in the garage, had left directions that a grease leak in the right rear wheel be stopped, and a direction to that effect was written upon a tag card and attached to the car. No further direction was contained upon the card and Curren received no further instruction either from his employer, Haynes, or from the owner of the car, Conrad, or from any other person, to do any other work upon the car. It appears from the testimony of Curren that he stopped the grease leak about 9 or 10 o'clock in the forenoon of June 2d, and made an entry upon the tag card to that effect, charging for three washers and one hour's work done, and no further entry was made upon the card, which card served as a basis for the charge to be made to the owner, Conrad, for the services rendered. The car remained standing in the garage until noon, and Conrad had not called for it. At noon the defendant Curren took

the car out, for the purpose, as he says, of testing the brakes, and drove it to his home in a distant part of the city to obtain his dinner. He did not stop on the way, and on his way back did not stop until a collision occurred with the plaintiff's motorcycle at 1:15, at the intersection of Michigan street and Ottawa avenue, which is a business portion of the city of Grand Rapids. The plaintiff testified that as he was going south on Ottawa avenue, approaching the intersection of Michigan street, knowing that it was a bad corner because to the east was a steep hill, he slackened his speed to six or seven miles an hour; that he looked to the west and saw nothing but a team of horses, and then looked to the east and saw the defendant's automobile some 250 feet away, and he continued on his way across the intersection looking to the west, and that he did not look again towards the east and towards the oncoming automobile until it was 10 feet away and when it was too late to avoid the accident, the two vehicles coming together and the plaintiff receiving the injuries complained of in this case. It was shown that by virtue of an ordinance of the city of Grand Rapids, the plaintiff had the right of way coming down Ottawa avenue.

The case went to trial as to the liability of the defendant Haynes, as the defendant Curren made no defense, and at the close of the proofs counsel for the defendant Haynes made a motion for a directed verdict on the grounds: *First*, that there was no evidence tending to prove that the status of the defendant Curren as an employee of the defendant Haynes, at the time of the alleged collision with plaintiff's motorcycle, was such that the defendant Haynes was responsible for any negligence on the part of Curren; and *second*, that a verdict should be directed because of the contributory negligence of the plaintiff in recklessly driving his motorcycle in front of the rapidly approaching

car without taking such precaution as the ordinarily prudent person should take, under the circumstances. The trial judge directed a verdict for the defendant Haynes for the second ground alleged, and judgment was entered in his favor. Whether or not the court erred in directing a verdict upon the record as made is the question before us for review.

Without determining whether or not the court came to a correct conclusion with reference to the second proposition advanced, we are clearly satisfied that he could have properly directed a verdict for the defendant Haynes for the first reason urged by defendant's counsel and that the result of his action, therefore, was a just and proper one. Accepting the testimony of Mr. Curren relative to taking the car out, under the circumstances of this case, in the light most favorable to the plaintiff's claim, we are clearly satisfied that it shows no liability on the part of the defendant Haynes. The testimony of Curren relative to this phase of the case is as follows:

"*Q.* And isn't that why you were telling the jury now you were under his (Haynes') directions and were out testing cars?

"*A.* I was under his employ, yes, sir. The garage is about 100 feet back in behind the house.

"*Q.* He has a little bit of repair shop that he takes care of cars and stores cars?

"*A.* Yes, sir.

"*Q.* And you knew this car was in there for storage?

"*A.* Yes, sir.   *   *   *

"*Q.* And you deliberately took this car out of this garage to take it home to dinner?

"*A.* I had been working on the car.

"*Q.* You took it home to dinner?

"*A.* Yes, sir.

"*Q.* At twelve o'clock noon?

"*A.* Yes, sir.

"*Q.* And you were coming back on the hill at quarter to one?

"*A.* Yes, sir.

"*Q.* It happened when you were coming from lunch?

"*A.* When I was coming from lunch.

"*Q.* And when you found you were going to be a party defendant in this case, you wanted to make this man Haynes to be the defendant in this case, and make him bear the burden?

"*A.* Yes, sir.

"*Q.* You always enter up everything you do on a car?

"*A.* No, sir.

"*Q.* Keep a time slip?

"*A.* I do now.

"*Q.* Haynes could not charge for anything if you didn't?

"*Mr. Linsey:* Haynes.

"*Q.* You did that then?

"*A.* Yes, sir. * * *

"*Q.* Now, when you got through the work on this machine, you wrote it down on a card?

"*A.* I don't remember whether I did or not.

"*Q.* He could not charge for it unless you did?

"*A.* A card was put in for the car before the repair work was done.

"*Q.* Was there anything said on that card about testing brakes?

"*A.* Didn't say anything about testing brakes.

"*Q.* Of course it did not, and you knew that car was not in there for any brake testing purposes, didn't you?

"*A.* Yes, sir, I did.

"*Q.* And you knew as a matter of fact that the only thing that car was in there for was to see why the rear hub on the right wheel was leaking grease?

"*A.* Yes, it was.

"*Q.* And you knew the rest of the time it stood right there, storage car, keeping it for him?

"*A.* Yes, sir.

"*Q.* And you know that that day it was noticed the wheel was leaking grease, and you were put there to fix the grease cup?

"*A.* Yes, sir.

"*Q.* That is all there was to it, wasn't it? You went over and took that car because you wanted to go home to dinner?

"*A.* No, sir, I had been working on the brakes; I worked them on my own hook. * * *

"*Q.* You read the card, didn't you?

"*A.* I read the card, certainly.

"*Q.* 'Remarks: stop grease leak right rear wheel.' There was nothing said anywhere that you knew of about brakes only of your own initiative, was there?

"*A.* No, sir. * * *

"*Q.* How far would you have to go out of the garage to see whether the brakes were tight?

"*A.* Well, you would have to go ten feet or twenty, or something like that. * * *

"*Q.* You could go out of—a hundred feet out of the garage as far as the little walk there, and have your brakes all tested?

"*A.* Yes, you could stay right in the garage there.

"*Q.* Mr. Haynes never told you to test those brakes?

"*A.* No.

"*Q.* And Mr. Conrad, the owner of the car, didn't tell you to?

"*A.* No, sir. * * *

"*Q.* Why didn't you run it out to the edge of the walk to see if the brakes worked—did you?

"*A.* No, sir.

"*Q.* Why didn't you do it?

"*A.* I wanted to get home to dinner. * * *

"*Q.* Did any superintendent tell you to fix the brakes?

"*A.* No, sir, nobody only myself.

"*Q.* And when you got it fixed then and didn't have any memorandum on this car, there was no way he could charge for it?

"*A.* No."

The testimony of the witness is very convincing that his claim that he was testing the car out with reference to the brake is merely an afterthought. He had no authority or direction either from his employer, Haynes, or the owner of the automobile, Conrad, to do anything whatever with reference to the automobile except to remedy a leakage from the grease cup in the hub of the right rear wheel. He admits that he was taking the machine out for the purpose of going to his dinner,

and we are of the opinion that there was no testimony that would warrant submitting to the jury the question of whether he was acting within the scope of his authority in taking out the car as he did. His act in taking and driving the car, under the circumstances, was clearly wholly outside his functions or duties as an employee of Haynes. In the recent case of *Eberle Brewing Co.* v. *Motor Co.*, 194 Mich. 140, it was said:

"The rule which plaintiff invokes is the rule which makes an employer responsible for the conduct of his servant, a part of which is that the servant must be acting within the scope of his employment. In recent cases the doctrine and its application were considered, and it was said:

" 'The phrase "in the course or scope of his employment or authority," when used relative to the acts of a servant, means while engaged in the service of his master, or while about his master's business.' *Riley* v. *Roach*, 168 Mich. 294 (134 N. W. 14, 37 L. R. A. [N. S.] 834); *Brinkman* v. *Zuckerman*, 192 Mich. 624 (159 N. W. 316).

"It would be an invasion of the rule, and a false application of it, if it was held that a servant may, at any time, volunteer to borrow a car and carry a passenger, or for his own use drive it, at his master's risk."

This is the rule which should be applied here.

The judgment is, therefore, affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.