MARX v. SCHULTZ.

1. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—SUFFICIENCY.
   An assignment that "the court erred in directing a verdict in favor of the defendants," where defendants offered no testimony, and there could be no possible uncertainty as to what was meant by the assignment, *held*, sufficiently specific.

2. NEGLIGENCE—DEATH—POISONS—INFERENCE—QUESTION FOR JURY.
   In an action by plaintiff for the wrongful death of his wife, claimed to have been caused by an overdose of arsenic due to the negligence of defendants, the owners of a drug store, in substituting the word "teaspoonful" in the label on the bottle, for the words "three drops" in the doctor's prescription, the testimony of a reputable physician, in answer to a hypothetical question stating the facts and describing her symptoms thereafter, that such symptoms are caused by an excessive dose of arsenic and probably would result in her death, *held*, sufficient to warrant the drawing of an inference favorable to plaintiff sufficient to warrant presenting the disputed question of fact as to the cause of her death to the jury.

3. APPEAL AND ERROR—WEIGHT OF EVIDENCE—JURY QUESTION.
   The weight of the testimony is primarily for the jury.

4. TRIAL—EXAMINATION OF WITNESSES—DISCRETION OF COURT.
   Where it was almost obligatory upon plaintiff to put the attending physician upon the stand in order to make his case, the court below should have been more liberal in allowing plaintiff to examine him as to certain incidents between them in order to show that the doctor had become adverse and unfriendly to plaintiff's cause.

Error to Wayne; Gage (William G.), J., presiding. Submitted October 9, 1919. (Docket No. 21.) Decided December 22, 1919.

Case by Richard Marx against George M. Schultz and others, copartners as the Peninsular Drug Com-

pany, for the negligent killing of plaintiff's wife. Judgment for defendants on a directed verdict. Plaintiff brings error. Reversed.

*Thomas A. Conlon,* for appellant.

*Thomas M. Cotter* and *William Wisner Taylor* (*E. Dean Alexander,* of counsel), for appellees.

This action was brought by Richard Marx for $25,-000 damages alleged to have been suffered by him on account of the death of his wife, Lydia Marx, caused, according to his claim, through the negligence of the above named defendants, or some of them. It appears that on November 30, 1915, Lydia Marx was being treated by Dr. Francis McNamara for a skin rash, his treatments having extended back to about the middle of that month, although he had been conversant with her condition for five years and had been one of several physicians in attendance on her from time to time during that period. It is disputed in the record as to the exact nature of the ailments that she had previously suffered, her husband having testified that her previous condition was "fair" and that with the exception of an operation for a "pus case in the 'abdomen' " and a few minor ailments, her health had been that of an ordinary woman. This assertion is denied by Dr. McNamara, whose testimony is as follows:

"*Q.* How long, then, if that is your answer, had this patient been suffering from Bright's disease?

"*A.* I think she was suffering for about four years. She had an infection about four years ago and had a very severe operation. I think—it is my opinion that the Bright's disease dates from that time because Bright's disease is simply an infection of the kidneys brought about by some bacterial poisoning."

Dr. McNamara was the only one of the doctors who had previously treated Mrs. Marx who was called by

the plaintiff. His diagnosis corresponds to that of Dr. Brandt, the county physician, who stated in his testimony that the *post mortem* examination of the organs of Mrs. Marx which he made soon after her death was the basis for his opinion that she had died of chronic Bright's disease of from one to ten years standing. Other similar and relative evidence, indicative of the dispute over the condition of the health of the deceased prior to November 30, 1915, was introduced.

On that date, however, a consultation was held in plaintiff's presence between Dr. McNamara and Dr. Varney, a specialist on skin diseases, and the latter then told the plaintiff that his wife was suffering from an eruption of the nerves. It was decided, as a result of this consultation, to prescribe Fowler's solution of arsenic, and Dr. McNamara thereupon wrote out a prescription directing the taking of three drops of this substance in water after meals, three times daily.

This prescription was handed to the plaintiff, who sent it to a drug store at 563 Dix avenue, in Detroit, this establishment being the property of some of the defendants. There is some confusion in the record as to who were the actual owners of the drug store at the time the prescription was filled, but this question did not become material because of the directed verdict for the defendants. It is clear, however, that the prescription was filled at this drug store, and that it was delivered at the Marx home late that afternoon by one of the clerks. The bottle containing it bore a label similar to those pasted on ordinary druggist's bottles but there was nothing to indicate the poisonous nature of the liquid. On the label appeared Dr. McNamara's name, followed by the direction: "Teaspoonful in water after meals three times daily. 11-30-15." Upon receipt of this medicine, Mrs. Marx

207—Mich.—42.

was given a teaspoonful, in accordance with directions. Immediately thereafter she appeared to be in great agony and threw herself from side to side of the bed, complained of pains in her stomach and tried to vomit. She soon became unable to speak distinctly. Plaintiff returned to his home about five o'clock, and at that time the face and body of Mrs. Marx were swollen and she could answer the plaintiff's questions only indistinctly and with difficulty. Plaintiff immediately tried to get Dr. McNamara by telephone, but owing to the doctor's absence, was not able to get him until about 12 o'clock midnight, when the doctor went to plaintiff's home.

The record shows that when the doctor arrived he was very much astonished to discover Mrs. Marx's condition, but when shown the bottle, he immediately scratched out the word "teaspoonful" and substituted "three drops" and administered an antidote for the overdose that she had taken. He thereupon left the house, stating in effect that he wished to go to the drug store to see his written prescription. In his testimony Dr. McNamara states that he found this just as he had written it—"three drops after every meal." This is undisputed, which seems to indicate conclusively that the mistake in the directions on the label was due to the negligence of someone at the drug store. Thereafter, Dr. McNamara removed the bottle containing the arsenical solution, without saying anything to the plaintiff about it. The latter missed it, and he called at the doctor's office in regard to it. The doctor admitted having it and offered it to the plaintiff, but plaintiff insisted that he return it, which he did. When it was returned, there was a label pasted over the original label, which stated in part: Directions, Poison. Fowler's Solution.

Lydia Marx suffered almost continuously from this time until the date of her death, February 7, 1916.

Her condition is thus described by the nurse who took care of her:

"I found her very sick and delirious part of the time—most of the time. Her mouth and throat were very sore, they was just a solid canker. She could not eat scarcely anything. She had no appetite. What we did give her was forced, of course; liquid, something very soft. And she was very nervous and had spells, she would jerk off the bed. They would go then, and then they would come on. I am not positive but I think in the evening she was worse that way. She seemed to be more delirious at night than she was during the day, and the bowels were very bad. They were a slimy substance streaked with blood, the urine scant."

The above described condition seems to have continued until her death, whereupon the plaintiff brought this action, claiming that the overdose of Fowler's solution had caused arsenical poisoning and was the direct and proximate cause of her death.

At the conclusion of the testimony for the plaintiff, counsel for defendant Schultz moved for a directed verdict, which motion was granted by the trial court, who, in addressing the jury, stated the following:

"In this sort of cases it becomes necessary, in this and other cases like it, it becomes necessary for the plaintiff to prove by a preponderance of evidence, by the evidence of experts, those who know, what was the cause of the party's death, that the party died from the administration of the medicine which it is alleged was administered to the deceased. * * *

"I am satisfied, gentlemen of the jury, that the plaintiff has not shown by evidence which is necessary to establish his case, that this wife of the plaintiff in the case died from the effects of the overdose of this arsenical preparation which was administered to her out of this bottle in question and in my view it is not a case that should be submitted to the jury. * * * It is an interesting question as to who owned this drug store at that time, and that would have been a question which the judge would have felt it would be

his duty to submit to you to determine on the evidence in the case as to who were the owners of this drug store and I would also have instructed you that whoever was the owner was responsible for any injury that occurred. But I direct you, gentlemen of the jury, to render a verdict of not guilty or no cause for action in this case."

KUHN, J. (*after stating the facts*). Fourteen assignments of error are relied upon by the plaintiff and the principal reason urged for reversal in this court is that the court erred in directing a verdict in favor of the defendants and in not submitting to the jury the question as to the cause of the death of plaintiff's wife.

Preliminary to a discussion as to whether or not there was evidence in the record to warrant the submission of the case to the jury, it is necessary to consider a claim urged now by counsel for the defendants. It is urged that the general assignment of error that "the court erred in directing a verdict in favor of the defendants" is not specific enough, and that under Supreme Court Rule No. 11 judgment should not be reversed for that reason, relying upon the case of *Jackson Bridge & Iron Co.* v. *Insurance Co.*, 122 Mich. 433. We are of the opinion, however, that the present situation falls within the rule announced in *Conely* v. *Dudley*, 111 Mich. 122, which is referred to in the *Bridge & Iron Co. Case, supra*, as an exceptional case. Here, as in that case, no testimony was offered by the defendants and there can have been no possible uncertainty as to what was meant by the assignment as made. It was equivalent to saying that there were facts in the case upon which a jury might find plaintiff entitled to recover. No one could possibly have been misled. See, also, *Wolfe* v. *Stack*, 153 Mich. 445.

Was there any testimony in the case to warrant the submission of the controversy to the jury? The fol-

lowing hypothetical question was submitted to Dr. Swartz, a physician of 25 years' practice and a graduate of the University of Michigan, who stated that he had made a study of the effect of arsenic on the human body:

"*Q.* The evidence in this case shows that on the morning of November 30, 1915, Dr. Francis W. McNamara, the physician in attendance, wrote out a prescription for Fowler's solution of arsenic as a remedy for a skin rash, from which Lydia Marx was complaining; that the prescription directed three drops of that solution after each meal as a dose, but by mistake the directions on the label of the bottle, when it came from defendants' drug store, where the prescription was filled, read 'One teaspoonful after meals.' That one teaspoonful was given Lydia Marx, according to those directions, and immediately thereafter she appeared to be in great pain, suffered inward convulsions, threw herself from one side to the other of the bed, and continually tried to vomit. That her whole body became greatly swollen. Her mouth and tongue so increased in size that she could hardly talk. That after November 30, 1915, large ulcers came in her mouth and nose; her eyes were swollen and liquid appeared therein. Her appetite was poor and she complained at times of pains about her heart and an irritable condition of her bowels. That the movement of her bowels was frequent and the substance passed therefrom was bloody and yellow in color. That she was delirious off and on from the time she received the overdose of the solution of arsenic, and her general conditions heretofore named continued down to the time of her death, February 7, 1916. In your opinion, would such conditions be caused by the overdose of Fowler's solution of arsenic which Lydia Marx received, and would the said overdose be the proximate cause of her death?   *   *   *

"*A.* Those symptoms are caused by an excessive dose of arsenic and probably would result in her death."

We are of the opinion that this testimony was sufficient to warrant the drawing of an inference favor-

able to the plaintiff sufficient to present the disputed question of fact—which should have been presented to the jury—as to the cause of the death of the plaintiff's wife. As to whether the testimony of the defendants' witnesses outweighed that of the plaintiff's is a question for the jury to determine in the first instance.

Some question is also made by plaintiff's counsel of the undue limitation by the trial court of the examination of Dr. McNamara, whom plaintiff was required to call. An attempt was made to show certain incidents that occurred between the doctor and the plaintiff, in order to make it appear that Dr. McNamara had become adverse and unfriendly to the plaintiff's cause. We are of the opinion that the judge should have been more liberal in allowing a showing of this character to be made, in view of the fact that Dr. McNamara, being the attending physician, it was almost obligatory upon the plaintiff's counsel to put him on the stand in order to make his case.

Other questions are discussed by counsel for the defendants which might be properly before the court if judgment had been obtained against them, but as upon this record the only assignments of error are upon the part of the plaintiff, we do not consider that these questions become material in the discussion of the case at this time.

Upon the record as here presented, we are of the opinion that the trial court erred in directing a verdict for the defendants, and the cause must therefore be reversed and a new trial ordered, with costs to the appellant.

BIRD, C. J., and SHARPE, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.