. Barnes *v.* MITCHELL. .

1. Physicians and Surgeons—Chiropractor—Malpractice—X-ray Treatment—Authority of Employee—Evidence.

Jury's verdict that defendant chiropractor's employee had been authorized to give plaintiff the X-ray treatment which resulted in burning his hands *held,* sustained by sufficient evidence.

2. Trial—Motion for Judgment Non Obstante Veredicto—Evidence.

Evidence must be viewed in light most favorable to plaintiff in considering a motion by defendant for a judgment *non obstante veredicto,* the same considerations obtaining as upon a motion to direct a verdict.

3. Principal and Agent—X-ray Treatment by Chiropractor's Employee.

The fact that defendant chiropractor's employee may have been exceeding her authority in using X-ray machine to give plaintiff a treatment would not excuse defendant from negligence, where the treatment was made in what the employee thought was in furtherance of her employer's interest and in the course or scope of her employment.

4. Same—Injury to Third Persons by Negligent or Disobedient Servant.

Generally, it is no excuse to an employer that an injury which has occurred to a third person was caused by disobedience,

---

References for Points in Headnotes

[1, 3, 7, 12, 13] 41 Am Jur, Physicians and Surgeons §§ 112, 131.
[1, 3, 12] Liability for injury by X-ray. 13 ALR 1414; 26 ALR 732, 735; 57 ALR 268, 274; 60 ALR 259.
[2] 30 Am Jur, Judgments § 57.
[4, 8, 9] 35 Am Jur, Master and Servant § 559.
[5] 38 Am Jur, Negligence § 297.
[5] *Res ipsa loquitur* distinguished from characterization of a known condition as negligence, and from the establishment of negligence by specific circumstantial evidence. 59 ALR 468; 78 ALR 731; 141 ALR 1016.
[6] 41 Am Jur, Physicians and Surgeons §§ 125–127.
[7] 41 Am Jur, Physicians and Surgeons § 112.
[10] 35 Am Jur, Master and Servant § 497.
[11] 2 Am Jur, Agency § 454; 35 Am Jur, Master and Servant § 513.

of his orders or neglect of ordinary precautions by a servant, whether they be express or implied orders, as the employer assumes the risks of such disobedience or neglect when he puts the servant into his business.

5. Negligence—Res Ipsa Loquitur—Circumstantial Evidence.
    The fact that the rule of *res ipsa loquitur* has not been adopted in this State does not prevent a plaintiff from proving a prima facie case by circumstantial evidence.

6. Physicians and Surgeons—Malpractice—Proof Required.
    A plaintiff is not required to prove a malpractice case with absolute certainty but is required to establish facts from which legitimate inferences may be drawn that present a prima facie case.

7. Same—Selection of Assistants—Apparent Authority.
    A physician or surgeon must exercise due care in selecting his assistants and may be liable for the neglect or fault of his employee, whether layman, nurse or another physician, where the employee was apparently acting under the direction of the physician.

8. Master and Servant—Scope of Employment—Negligence of Servant—Action Contrary to Instructions.
    Generally, a master is liable for any act of his servant done within the scope of his employment, and if a servant is acting in the execution of his master's orders, and by his negligence causes injury to a third party, the master will be responsible, although the servant's act was not necessary for the proper performance of his duty to his master or was even contrary to his master's instructions.

9. Same—Respondeat Superior—Negligence.
    The application of the rule *respondeat superior* does not depend upon the obedience of the servant to his master's orders, nor upon the legality of the servant's conduct, and where he is acting within the scope of his employment and, in so acting, does something negligent or wrongful, the employer is liable, even though the acts done may be the very reverse of that which the servant was actually directed to do.

10. Same—Presumption of Liability for Servant's Negligence—Rebuttal.
    To rebut the presumption of liability of a master for damage consequent upon the negligent act of a servant, done within the apparent scope of the latter's employment, it must be shown either that the act was purely wanton or that it was

not performed in furtherance of any duty within the actual scope of the servant's authority.

11. PRINCIPAL AND AGENT—EXTENT OF AUTHORITY—QUESTION OF FACT.

The extent of the authority of a servant or an agent is ordinarily a question for the jury, where the scope of such authority depends upon disputed matters of fact.

12. PHYSICIANS AND SURGEONS—CHIROPRACTORS—NEGLIGENCE OF SERVANT—COMMON LAW—STATUTES.

The liability of defendant chiropractor for the admitted negligent burning of plaintiff's hands from an overdosage of X-ray by defendant's servant must be determined by an application of common law in the absence of pertinent statutory provisions.

13. SAME—MALPRACTICE—EVIDENCE—CHIROPRACTOR—X-RAY TREATMENT BY EMPLOYEE—BURNS.

Evidence in malpractice case against chiropractor was sufficient to justify jury's verdict that defendant's employee, a person admittedly not qualified to give X-ray treatments, had given plaintiff such a treatment that burned his hands, which was within the scope of her employment to further the interest of defendant rather than that of her own, hence, it was unnecessary for plaintiff to prove that it was the usual and customary practice for her to give X-ray treatments or that the treatment was given under the direction of the defendant, notwithstanding it also appears that defendant himself had theretofore administered X-ray treatments to plaintiff and was absent from the office on the day plaintiff was burned.

SHARPE, J., dissenting.

Appeal from St. Joseph; Arch (Charles O.), J., presiding. Submitted June 15, 1954. (Docket No. 54, Calendar No. 46,046.) Decided November 29, 1954. Rehearing denied January 12, 1955.

Case by George O. Barnes against L. D. Mitchell, chiropractor, for damages resulting from X-ray burns sustained in treatment at defendant's office. Verdict for plaintiff. Judgment for defendant notwithstanding verdict. Plaintiff appeals. Reversed and remanded for entry of judgment on verdict.

*Homer Arnett,* for plaintiff.

*Leonard J. Weiner* and *Roy H. Hagerman,* for defendant.

KELLY, J. Defendant, a chiropractor, operates a clinic at Three Rivers, Michigan. Plaintiff started his suit claiming that both of his hands were severely burned as a result of an X-ray treatment he received at defendant's clinic on October 6, 1948. This appeal is taken from the court's judgment for the defendant notwithstanding the jury's verdict of $3,500 for the plaintiff.

Plaintiff did not go to defendant for treatment of his hands but for a back ailment. Plaintiff testified that every winter he would get "weather cracks" in his hands because as a wood pattern worker he had to work with wood, resin and tar. Defendant noticed this condition and convinced plaintiff he could cure his hands at the same time he gave him treatments for his back. Defendant, testifying as to the condition of the hands, said that plaintiff had an allergy, eczema.

Defendant testified he treated plaintiff's back ailment by massage and diathermy, using an "electrical instrument that generates heat," and stated: "I gave adjustment, massage to him and my assistant gave the diathermy and that part of it." Plaintiff had appointments at the clinic 3 times a week, but he received X-ray treatments for his hands every second or third appointment. Defendant gave plaintiff's hands 5 X-ray treatments previous to October 6, 1948.

Defendant had 2 employees at his clinic, Velda Parks and Bonnie Esterbrook. They are referred to as nurses in the briefs but the record does not disclose the nature or extent of their training or whether they were registered nurses.

When plaintiff kept his appointment on October 6, 1948, he was advised by Velda Parks that "Bonnie has forgot about you and gone home, she is supposed to give you your treatment, I will call her back." Bonnie Esterbrook came back to the clinic in response to Velda Parks' call, and while she was giving the X-ray treatment to plaintiff's hands a muffled explosion was heard. Plaintiff testified that on his way home his hands commenced to burn, that he could smell burned flesh, and that his hands were all red when he arrived home. On his next regular appointment at the clinic, 3 days later, plaintiff showed his hands to defendant, stating he thought he had had too strong a treatment. Defendant said: "My goodness, your hands are burned. * * * I am glad the tube burst because if it had not burst, you would not have any hands."

Both Dr. Grekin, an expert witness in skin treatment and use of X-ray, and Dr. Hildreth, a specialist in X-ray and radiology, testified, and the record is convincing that plaintiff suffered X-ray burns from an overdosage of X-ray; that the palms of both hands were burned to such an extent that not only will the injury be permanent but with the danger that the X-ray dermatitis will break down into cancer.

Defendant was called to the stand by plaintiff for cross-examination under the statute.* He did not attempt to explain or defend the actions of his employee Bonnie Esterbrook. He stated he was in Ohio on October 6, 1948, that he had never authorized her to give the plaintiff the X-ray treatment, nor had she ever given plaintiff a treatment previous to October 6th. Defendant testified that when he returned from Cleveland to his clinic he found the tube of his X-ray machine burned out.

---

* See CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.

The trial court in his opinion stated: "Neither Velda Parks nor Bonnie Esterbrook were parties defendant, nor were either of them called as witnesses in this case by either party, so we do not have the benefit of their testimony. It is not known whether they were available or not."

Defendant answers plaintiff's claim of negligence by merely saying that he never authorized his employee Bonnie Esterbrook to use the X-ray. Defendant did not testify that he cautioned her against using the X-ray machine or forbade her its use and admits that previous to October 6th she used electrical instruments generating heat to give diathermy treatments to plaintiff.

The court gave as his reason for rendering judgment notwithstanding the verdict that plaintiff failed to prove that it was the usual and customary practice for Bonnie Esterbrook to give X-ray treatments or that the treatment was given under the direction of the defendant.

There is nothing in the record that even allows speculation that Bonnie Esterbrook gave the treatment for her own profit or gain. As defendant's employee she was using defendant's clinic and X-ray machine to give a treatment to defendant's patient and there is every reason to conclude that she thought she was furthering her employer's interest in so doing. There was sufficient evidence to sustain the jury's verdict that Bonnie Esterbrook was authorized to give the plaintiff the X-ray treatment. This Court has held: "In considering a motion by defendant for a judgment *non obstante veredicto,* the evidence must be viewed in the light most favorable to plaintiffs; the same considerations obtaining as upon a motion to direct a verdict." *Yacobian* v. *Vartanian* (syllabus), 221 Mich 25. But even though Bonnie Esterbrook was exceeding her authority in

using the X-ray machine, that would not excuse defendant from negligence.

In *Riley* v. *Roach,* 168 Mich 294 (37 LRA NS 834), this Court defined the term "in the scope of his employment" as follows (p 307) :

"The phrase 'in the course or scope of his employment or authority,' when used relative to the acts of a servant, means while engaged in the service of his master, or while about his master's business."

In *Chicago & Northwestern Railway Co.* v. *Bayfield,* 37 Mich 205, 212, 213, it is stated:

"Nor do we think it follows that because Smith at the time was exceeding his authority, the company is not responsible for his action. It is in general no excuse to the employer that an injury which has occurred was caused by disobedience of his orders, whether they be express orders or implied orders. He assumes the risks of such disobedience when he puts the servant into his business; and the reasons for holding him responsible for the servant's conduct are the same whether the injury results from a failure to observe the master's directions, or from neglect of the ordinary precautions for which no specific directions are deemed necessary. It will be conceded that for a positive wrong beyond the scope of the master's business, intentionally or recklessly done, the master cannot be held responsible; this being very properly regarded as the personal trespass or tort of the servant himself. But when the wrong arises merely from an excess of authority, committed in furthering the master's interests, and the master receives the benefit of the act, if any, it is neither reasonable nor just that the liability should depend upon any question of the exact limits of the servant's authority. The master fixes these, and it is his duty to keep his servant, in what is done by him, within the limits fixed. An act in excess would still have the apparent sanction of his authority; the occasion for it would be furnished by the

employment, and the injured party could not always be expected to know or be able to discover whether it was or was not without express sanction."

In *Loux* v. *Harris,* 226 Mich 315, we said (pp 317–322):

"The declaration charged defendant with liability as master of Wagner. Defendant admitted the relation, denied Wagner was acting within the scope of his employment and had verdict in his favor because Wagner disobeyed his instructions. Was the trial judge in error in directing a verdict for defendant? * * *

"This suit is an action by a third person against the owner of an automobile for a tort committed by a servant while about his master's business. The motor vehicle statute extends liability of an owner to cases other than master and servant where an injury is occasioned by the negligent operation of an automobile 'being driven by the express or implied consent or knowledge of such owner.' *This, however, is a common-law action against a master for the negligence of his servant* while about the master's business and, in considering the legal questions, the statute relied upon in the court below must be laid entirely aside. An extended examination of text books and case law upon the subject of liability of a master for torts of a servant discloses quite general agreement upon certain principles. Some of such principles will be mentioned for we intend to apply them. (Emphasis supplied.)

"Selling gasoline was a part of defendant's business and, therefore, within the scope of Wagner's employment. Wagner violated instructions in taking the gasoline to the stranded renter of one of defendant's cars. In doing this was he about the business of defendant or was his act a severance in and of itself of his relation to his master's business? Was he driving on his master's business? Certainly he was not driving on his own affairs. Disobedience of how to handle business placed in his charge did not

relieve the master. The liability of defendant depends upon whether Wagner, in taking gasoline to the renter of one of defendant's cars, was acting within the scope of his employment.

"In *Riley* v. *Roach,* 168 Mich 294, 307 (37 LRA NS 834), it was said:

" 'The phrase "in the course or scope of his employment or authority," when used relative to the acts of a servant, means while engaged in the service of his master, or while about his master's business.'

"See, also, *Hartley* v. *Miller,* 165 Mich 115 (33 LRA NS 81, 1 NCCA 126); *Brinkman* v. *Zuckerman,* 192 Mich 624; *Hill* v. *Haynes,* 204 Mich 536.

"Wagner was authorized to sell gasoline at the garage. He made a sale of what he was employed to sell but delivered the article in disobedience of instructions given him by his master, and employed defendant's vehicle in doing so, contrary to the master's instructions. He was, therefore, about his master's business but acting in a forbidden way. Wagner's disobedience in not notifying the defendant and in leaving the garage and using the automobile did not place him outside of the scope of his employment. * * *

"In *Smith* v. *Yellow Cab Co.,* 173 Wis 33 (180 NW 125), a taxicab driver, in violation of his master's instructions, took passengers outside of a city and, while returning, caused an accident. It was claimed the servant was outside the scope of his employment. In passing on this claim the court said [pp 35, 36]:

" 'If it were true that a servant is outside the scope of his employment whenever he disobeys the orders of his master the doctrine of *respondeat superior* would have but scant application, for the master could always instruct his servant to use ordinary care under all circumstances. The servant's negligence would therefore always be contrary to orders and the nonliability of the master would follow. But such is not the law. The servant is within the scope of his employment when he is engaged in the mas-

ter's service and furthering the master's business though the particular act is contrary to instructions. The purpose of the service rendered by the employee, and not the method of performance, is the test of whether or not the servant is within the scope of his employment. If the purpose is to further the master's business and not that of the servant, the latter is within the scope of his employment though he be negligent or disobeys orders as to the method of its execution.' * * *

"The tort of the servant was committed while he was about the business of his master and not while on any affair of his own. The case should have been left to the jury."

This Court in *Loveland* v. *Nelson*, 235 Mich 623, considered a malpractice suit involving the extraction of a tooth. At the close of plaintiff's proofs the trial judge directed a verdict on the ground that the testimony left the question of the proximate cause of plaintiff's condition too conjectural to authorize the submission of the case to the jury, and that without adopting *res ipsa loquitur* no negligence of defendant was established. We said (p 625):

"This Court has not adopted the rule *res ipsa loquitur* but this does not prevent a plaintiff making a case by circumstantial evidence. In *Burghardt* v. *Detroit United Railway,* 206 Mich 545 (5 ALR 1333), this Court, with the citation of numerous sustaining authorities, said:

" 'This Court has not adopted the rule *res ipsa loquitur;* we have uniformly held that the happening of the accident alone is not evidence of negligence; and we have as uniformly held that negligence may be established by circumstantial evidence, and that where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts that at least a prima facie case is made.'

"And it is the province of the jury to draw the legitimate inferences from the established facts in this character of cases. *Marx* v. *Schultz,* 207 Mich 655 (19 NCCA 976); *Wood* v. *Vroman,* 215 Mich 449. The *Wood Case* was a malpractice case, and it was said by Mr. Justice [NELSON] SHARPE, speaking for the Court (pp 461, 462):

" 'The plaintiff was not required to prove to an absolute certainty that the infection was caused by the introduction of the germs in the pus. He was required to establish facts from which such an inference might fairly have been drawn by the jury.'

"So, if the plaintiff's testimony, taken in its most favorable light, tends to make such a case that, by excluding other causes and the establishing of the circumstances surrounding the incident, the jury would, by drawing the legitimate inferences from the established facts, find negligence on the part of defendant, they have established at least a prima facie case entitling them to take the judgment of the jury."

Appellee in his brief urges the point that general principles controlling responsibility in master and servant cases are not applicable in this instance and states that "there is a limitation to the general rules of agency or master and servant."

The only authority appellee cites for making this exception is 41 Am Jur, Physicians and Surgeons, § 112, pp 223, 224:

"It is the established rule that a physician or surgeon must exercise due care in selecting his assistants, and on the simplest principles of the law, agency, or of master and servant, a physician or surgeon may be liable for the neglect or fault of his employee or servant, such as an assistant who is working under his direction, for injury resulting therefrom to a patient."

We do not believe the above-cited section confines responsibility of a physician or doctor to only acts

which are committed by the assistant who is working under the direction of the doctor.

In 70 CJS, Physicians and Surgeons, § 54, pp 978, 979, it is stated:

"A physician is responsible for an injury done to a patient through the want of proper skill and care in his assistant, and through the want of proper skill and care in his apprentice, agent, or employee. The fact that a physician's assistant is a member of the same or a similar profession does not make the rule of *respondeat superior* inapplicable, and a physician is liable not only for negligence of laymen employed by him, but also for the negligence of nurses or other physicians in his employ."

Massachusetts has adopted a different principle than is advocated by appellee, as is evidenced by *McDonald* v. *Dr. McKnight, Inc.*, 248 Mass 43 (142 NE 825). In a tort action against a dentist for personal injuries alleged to have been caused by the negligence of the employee of the defendant the court held (syllabi):

"(1) The question, whether the extractor of the tooth was acting within the scope of his ostensible employment as between the parties, was for the jury;

"(2) The plaintiff had a right to trust to appearances and to the not unreasonable assumption that the defendant would not permit unauthorized persons to appear to be acting as his agents; and he could not be expected nor was he required to ask for proof of the authority of the cashier or of the registered dentist or of the extractor of the tooth;

"(3) The defendant could not avoid liability by evidence that the extractor's authority was limited."

In *McConnell* v. *Williams*, 361 Pa 355 (65 A2d 243), the doctor was charged with being responsible for the negligent acts of an interne in a hospital after a baby's birth and after the doctor gave the

baby to the interne to apply drops to the baby's eyes. The court said (p 357):

"Physicians and surgeons, like other persons, are subject to the law of agency."

In the New Jersey case of *Klitch* v. *Betts,* 89 NJL 348 (98 A 427), the question was presented as to a dentist's negligence for the improper extraction of a tooth by his assistant. The court stated (pp 351, 352):

"The claim that the relationship of master and servant did not exist was based upon the fact that Snively's hours in the defendant's office were from 9 a.m. to 6 p.m., and that he was not authorized to extract teeth except under the supervision of the defendant, the contention being that because the tooth was extracted after 6 o'clock, and in the absence of the defendant, it was the independent act of Snively, and not done in the course of his employment. What Snively did was within his implied authority, and even if done without the authority of the defendant, for any violation of general rules laid down for Snively's guidance the master is still responsible. When the defendant employed Snively and left him in charge of his office so that persons going there had a right to infer that he represented the defendant, the mere fact that it was after 6 o'clock did not destroy the relation of master and servant.

"The general rule is a very clear one, that the master is liable for any act of his servant done within the scope of his employment, and if a servant is acting in the execution of his master's orders, and by his negligence causes injury to a third party, the master will be responsible, although the servant's act was not necessary for the proper performance of his duty to his master or was even contrary to his master's orders. *McCann* v. *Consolidated Traction Co.,* 59 NJL 481, 487 (36 A 888, 38 LRA 236).

"The application of the rule *respondeat superior* does not depend upon the obedience of the servant

to his master's orders, nor upon the legality of the servant's conduct; where a servant is acting within the scope of his employment, and in so acting does something negligent or wrongful, the employer is liable, even though the acts done may be the very reverse of that which the servant was actually directed to do. *Driscoll* v. *Carlin*, 50 NJL 28, 30 (11 A 482). * * *

"To rebut the presumption of liability of a master for damage consequent upon the negligent act of a servant, done within the apparent scope of the latter's employment, it must be shown either that the act was purely wanton or that it was not performed in furtherance of any duty within the actual scope of the servant's authority. *Rhinesmith* v. *Erie Railroad Co.*, 76 NJL 783 (72 A 15).

"In cases where the scope of authority of a servant or agent depends upon disputed matters of fact, the extent of such authority is ordinarily a question for the jury. *Dierkes* v. *Hauxhurst Land Co.*, 80 NJL 369 (79 A 361, 34 LRA NS 693)."

There are no statutory provisions in this State applicable to the question presented to this Court, and, therefore, the common law determines the question of defendant's liability for the admitted negligent burning of plaintiff's hands. If the common-law rule is to be abandoned in this State it will have to be through legislative enactment rather than by a decision of this Court.

The defendant's negligence in this case was established because:

1. There was sufficient evidence that the defendant authorized the X-ray treatment to submit the question to the jury and sufficient evidence to sustain the jury's verdict;

2. It was not necessary for the plaintiff to prove that it was the usual and customary practice for Bonnie Esterbrook to give X-ray treatments or that the treatment was given under the direction of the de-

fendant. There was sufficient evidence that Bonnie Esterbrook gave the X-ray treatment within the scope of her employment and to further the interest of the defendant rather than her own interest. We cannot sustain the trial court's reason for judgment notwithstanding the verdict.

Defendant urges another reason not mentioned by the lower court for sustaining the judgment for defendant notwithstanding the verdict, namely, the failure of the plaintiff to meet the proof required in *Ballance* v. *Dunnington,* 241 Mich 383 (57 ALR 262); *Nemer* v. *Green,* 316 Mich 307; *Facer* v. *Lewis,* 326 Mich 702. In each of these cases this Court stated that the defendant physician's responsibility to his patient would be determined by deciding whether he exercised the reasonable and ordinary care, skill and diligence possessed by others in the same line of practice in similar localities. The reason for these decisions is obvious—to determine the responsibility of the physician who claimed to be qualified to administer X-ray treatments.

The above-cited cases do not apply to the present case. No one, including the defendant, claimed that Bonnie Esterbrook was qualified to administer X-ray treatments, and all the facts and circumstances justified the jury's finding that she was not qualified.

The judgment for the defendant notwithstanding the verdict is reversed and the case is remanded with directions to the trial court to enter a judgment in favor of the plaintiff in accordance with the verdict of the jury. Costs to plaintiff.

BUTZEL, C. J., and CARR, BUSHNELL, BOYLES, and REID, JJ., concurred with KELLY, J.

DETHMERS, J. I concur in result for the first reason herein advanced.

SHARPE, J. *(dissenting)*. In coming to my conclusions in this case I must take into consideration the following established facts: The cause of action is planted upon the action rendered by Bonnie Esterbrook on October 6, 1948, in giving plaintiff an X-ray treatment in the office of the defendant; that Bonnie Esterbrook had never assisted defendant in giving X-ray treatments to plaintiff; that she was never authorized to give plaintiff an X-ray treatment; and that prior to the above date she had never given plaintiff an X-ray treatment.

It is also well established that the operation of an X-ray machine can only be performed by one having special knowledge of its uses and method of operation. Dr. R. C. Hildreth testified:

"There is quite a bit to the discretion of dosage from X-ray machine, the way it is produced and the way it is measured. Inside of the X-ray tube there is a change in the form of energy from electricity into X-ray, just like in certain power plants for steam locomotion, you throw in coal and water and you make steam, which is a different type of energy. Also inside of X-ray tube you apply electricity and against the target of the tube the energy is changed into the form of X-ray, it comes out of the tube. Now you can measure the amount of electricity that goes into the X-ray, you can measure that like you do amperes and volts; when you put your motor in the house you put on kilowatts or watts, which is merely volts, time and electricity, so you measure electricity from wattage per unit. A unit of electricity is a watt, and the other units are amperes and volts, amperage is time, voltage is watt. You can measure the electricity that goes into the tube, which is an indirect and inaccurate measurement because the power is so inefficient in forming the X-ray. Now when you measure the power that comes out of the tube you have to use another unit of measurement, a unit like a gallon, or a quart of X-ray, we call the

unit the Roentgen—we write it simply 'R', 300 R, or 300 Roentgens, that is the unit of X-ray dose that comes out of the tube, and we use special instruments for measuring the dose that comes out of the tube. There are other factors that are important, like time, is of some value, distance is much more important than time, the filter is of some value too, but anyone using X-ray machine for a treatment needs to know how many units he is putting on to the skin surface at a certain distance; it is not of great value to know how much, to know too much about the amount of electricity going into the machine, because the machine is very efficient."

In *Facer* v. *Lewis,* 326 Mich 702, an action was brought to recover damages for the alleged malpractice by a physician in the use of an X-ray. In the above case we had occasion to discuss the skill necessary in the use of X-ray machines. We there said (p 714):

"Although laymen generally are acquainted with the fact that X-rays are destructive and may result in burns or other serious conditions, yet the testimony of plaintiff's own medical witness was such as to clearly demonstrate that an X-ray treatment for warts involves questions of skill, judgment, and practice beyond the knowledge of laymen and upon which a jury would need the advice of experts to determine whether or not the claimed acts of defendant were improper."

Other courts have also taken this same position by ruling that the use of X-ray equipment requires a special personal skill. See *Dorr, Gray & Johnston* v. *Fike,* 177 Ark 907 (9 SW2d 318); *Dorr, Gray & Johnston* v. *Headstream,* 173 Ark 1104 (295 SW 16); *Runyan* v. *Goodrum,* 147 Ark 481 (228 SW 397, 13 ALR 1403); *Henslin* v. *Wheaton,* 91 Minn 219 (97 NW 882, 64 LRA 126, 103 Am St Rep 504).

In *Dorr, Gray & Johnston* v. *Fike, supra,* the Arkansas court clearly demonstrated that the use of X-ray demands as similar a skill as any other medical treatment when it said (p 908):

"A physician or other person undertaking to use X-rays is held to the same measure of responsibility as in administering other forms of medical treatment. He impliedly contracts with the patient that he possesses ordinary skill in administering X-rays, and that he will exercise reasonable skill, care, and diligence in his treatment or diagnosis of the patient."

I agree with the plaintiff that according to the general principles of agency law in this State "the phrase 'in the course or scope of his employment or authority,' when used relative to the acts of a servant, means while engaged in the service of his master, or while about his master's business." *Brinkman* v. *Zuckerman,* 192 Mich 624, 627; that it is not essential that the act be especially authorized by the master. *Cook* v. *Michigan Central R. Co.,* 189 Mich 456; that "A servant is within the scope of his employment, although conducting his master's business in a manner contrary to instructions." *Loux* v. *Harris,* 226 Mich 315, 322. Also, see *Michael* v. *Kircher,* 335 Mich 566; that "It is elementary that persons dealing with an agent may rely on his apparent authority, * * * and that such authority is to be gathered from all of the facts and circumstances properly admitted in evidence." *Faber* v. *Eastman, Dillon & Co.,* 271 Mich 142, 145; that " ' "Whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of the principal the particular act, and such particular act

had been performed, the principal is estopped from denying the agent's authority to perform it." ' " *Grinnell* v. *Carbide & Carbon Chemicals Corp.,* 282 Mich 509, 525; that "The general rule is that the powers of an agent are prima facie coextensive with the business intrusted to his care." *Grossman* v. *Langer,* 269 Mich 506, 510. See, also, 1 Restatement, Agency, ch 7, § 267, p 590.

Having in mind the skill required in the operation of an X-ray machine, the first question that presents itself to us is the authority of Bonnie Esterbrook in attempting to give an X-ray treatment to plaintiff on the day in question. Plaintiff urges that the general rules of agency and master and servant apply to the medical and chiropractic professions and that defendant is bound by the acts of his employee. In 41 Am Jur, Physicians and Surgeons, § 112, pp 223, 224, it is said:

"It is the established rule that a physician or surgeon must exercise due care in selecting his assistants, and on the simplest principles of the law, agency, or of master and servant, a physician or surgeon may be liable for the neglect or fault of his employee or servant, such as an assistant who is *working under his direction,* for injury resulting therefrom to a patient." (Italics ours.)

It is evident that the trial court had the above rule in mind when he granted defendant's motion for judgment notwithstanding the verdict:

"However, it would seem that for the defendant to be bound by the acts of his agent in this case it must be shown that the act complained of was either the *usual practice; customary practice, or under such circumstances as defendant could reasonably have anticipated, or made under the supervision or direction of the defendant."*

However, it is to be noted that none of the above quoted decisions involve the relationship between a professional man and his nonprofessional servant, nor do the cases cited in Mr. Justice KELLY's opinion cite cases involving the issue in the case at bar. Plaintiff cites and relies on *Mullins* v. *DuVall,* 25 Ga App 690 (104 SE 513). The court held defendant liable for the negligence of his assistant in administering an injection because the defendant had specifically authorized the servant to perform this professional service. Other cases in this field of the law are *Hedlund* v. *Sutter Medical Service Co.,* 51 Cal App2d 327 (124 P2d 878), where a nurse negligently administered allergy tests; *McCullough* v. *Langer,* 23 Cal App2d 510 (73 P2d 649), where a nurse negligently administered a heat treatment; *Simons* v. *Northern Pacific R. Co.,* 94 Mont 355 (22 P2d 609), where a nurse used the wrong chemical solution in treating the patient.

The 2 cases I have found dealing with the relationship between an osteopath and his nonprofessional servant and a chiropractor and his nonprofessional servant, *Noren* v. *American School of Osteopathy,* 223 Mo App 278 (2 SW2d 215), affirming, 298 SW 1061, certiorari denied, 322 Mo 991 (18 SW2d 487) ;* *Carver Chiropractic College* v. *Armstrong,* 103 Okla 123 (229 P 641), are also not applicable to the case at bar. In both of these cases the servant was again authorized to perform the professional act which caused the injury.

Like physicians, dentists, chiropractors, or any other professional persons, an attorney has special professional skills which he uses when rendering professional services to his clients. The attorney's secretary or clerk generally does not have such skills

---

* *State, ex rel. American School of Osteopathy,* v. *Judges of St. Louis Court of Appeals,* where plaintiff asked that opinion in *Noren Case* be quashed.—REPORTER.

and therefore the courts have held that the attorney is not liable for the negligence of his secretary or clerk in rendering an unauthorized legal service, such as where the clerk offered to settle a suit, *Alterman* v. *Weil,* 80 Misc 337 (142 NYS 465); where a clerk had made an affidavit in support of a motion to punish a judgment debtor for contempt, *Eyre* v. *Stubbert,* 71 Misc 147 (128 NYS 4); where verbal notice of the defendant's intention to file an appeal given to the district attorney's clerk was not considered sufficient notice. *Page* v. *Superior Court of City and County of San Francisco,* 122 Cal 209 (54 P 730).

In *Chapman* v. *Muskegon County Board of Supervisors,* 169 Mich 10, we had occasion to express our thinking upon the right of a physician to delegate his services to another physician. In that case plaintiff was hired by a township board to render services to one Bessie Peterson and family. Plaintiff authorized a Dr. Smith to render the family services, and in an attempt to collect for services for Dr. Smith, we said (p 18):

"We think it would be going too far to hold that a physician, having a contract of employment with a health board, might hire another physician to do the actual work, and himself collect for the service. It may well be supposed that the element of personal fitness enters into the contract."

Mr. Justice KELLY relies on *Riley* v. *Roach,* 168 Mich 294 (37 LRA NS 834). In that case defendant was held not liable when his chauffeur, without the consent of the owner, used the owner's automobile and was involved in an accident.

In *Chicago & Northwestern Railway Co.* v. *Bayfield,* 37 Mich 205 (16 Am Neg Cas 87), we held that a master is liable for injuries to his servant resulting

from the master's negligence in exposing the servant to risks which the latter is incapable of appreciating.

In *Loux* v. *Harris,* 226 Mich 315, defendant, as owner of a garage and gasoline station, was held liable for the action of his agent while delivering a can of gasoline contrary to the express orders of defendant. In none of the above cases is there any authority involving the issue in the case at bar.

In *Loveland* v. *Nelson,* 235 Mich 623, relied upon by Mr. Justice KELLY, there was an action for malpractice in the extraction of a tooth by defendant, a dentist. In that case there was no question of agency involved and it has no relationship to the issue involved in the case at bar.

In *Klitch* v. *Betts,* 89 NJL 348 (98 A 427), plaintiff, a 10-year-old boy, had a tooth extracted by Dr. Snively, an employee of the defendant. The extraction resulted in the fracture of the boy's jawbone. It was there held that there was sufficient evidence of the relationship between defendant and Dr. Snively to be submitted to a jury. It should be noted in the above case that there was no question involved as in the case at bar as Dr. Snively was a qualified dentist and not a mere office employee.

In *McDonald* v. *Dr. McKnight, Inc.,* 248 Mass 43 (142 NE 825), Dr. Campbell was in charge of defendant's dental office. He authorized Mr. Friedman, who was employed in laboratory work, to extract a tooth. Defendant was held liable for damages in the faulty extraction of the tooth. In the above case the employee was expressly authorized to make the extraction.

In *McConnell* v. *Williams,* 361 Pa 355 (65 A2d 243), it was held that:

"Evidence that surgeon, having undertaken to perform Caesarian delivery and care for infant until turned over to family physician, selected an interne

to assist him and care for infant at time of delivery and had complete control of operating room and every person in it during operation presented a question for jury as to whether interne, though in general employ of nonprofit charitable hospital, was temporary servant of surgeon for whose negligence in performing task assigned to him of inserting silver nitrate solution into infant's eyes surgeon would be liable." (Atlantic syllabus.)

In the above case the services rendered by the interne or agent were expressly authorized by the defendant.

We have in mind that physicians, surgeons, dentists, chiropractors and practitioners of other schools of medicine, as well as attorneys, offer their patients or clients a personalized service based on special skill. In the case at bar defendant was rendering a professional service to plaintiff through the use of the X-ray. We also have in mind that while Bonnie Esterbrook had previously helped to give plaintiff diathermy treatments, she had never given him X-ray treatments, nor had plaintiff been told by defendant that Bonnie Esterbrook could give him such treatments. It also appears to us that a change in the clinic's routine, which involved professional skill, should have put plaintiff on notice that she might have been acting beyond the scope of her employment. In our opinion the attempt of Bonnie Esterbrook to render, without specific authority, an X-ray treatment, was not incidental to those acts she was authorized to perform, and therefore not within the scope of her authority.

The judgment *non obstante veredicto* should be affirmed, with costs to defendant.