Cite as 2025 Ark. App. 290

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CR-24-392

| | | |
|---|---|---|
| LUIS ARTERO | APPELLANT | Opinion Delivered May 7, 2025 |
| | | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17CR-23-252] |
| V. | | |
| | | HONORABLE MARC MCCUNE, JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED IN PART; REVERSED AND REMANDED IN PART TO CORRECT AN ILLEGAL SENTENCE |

**CINDY GRACE THYER, Judge**

Luis Artero was convicted by a Crawford County jury of second-degree sexual assault and received a twenty-year sentence on that charge. He also received a consecutive seven-year sentence enhancement under Arkansas Code Annotated section 5-4-702 (Repl. 2024) for having committed the crime in the presence of a child. On appeal, Artero argues that the circuit court erred in allowing expert testimony on the subject of delayed disclosure because the witness providing the testimony lacked the requisite credentials to provide such testimony. He further argues that there was insufficient evidence to support the enhanced sentence. We affirm the court's admission of expert testimony on delayed disclosure. However, we reverse and remand for the circuit court to strike the sentencing enhancement as an illegal sentence.

In November 2022, ten-year-old MV reported to her school counselor, Cheryl Peters, that she had been touched inappropriately by her paternal grandfather, Luis Artero. The alleged abuse occurred in 2017 when MV was in kindergarten. Peters, as a mandated reporter, contacted the child-abuse hotline to report the disclosure.

After the abuse had been disclosed and reported, Artero was arrested and charged with second-degree sexual assault. The information was subsequently amended to include a sentencing enhancement under Arkansas Code Annotated section 5-4-702 for having been committed in the presence of a child.

At trial, MV testified that once, when she was in kindergarten, she spent the night at Artero's house. Her grandmother, her uncle, her brother, and Artero were all there. That night, she slept in her grandparents' bedroom with her brother and Artero. All three slept in the bed, with MV sleeping between the other two. Her uncle slept in his own room, while her grandmother slept on the couch.

MV testified that while they were in bed that night, Artero put his finger in her "private spot." She explained that she was lying on her back, that he touched her under her clothes, and that he moved his hand up and down while doing so. She said she twisted and turned toward her brother because it was uncomfortable. She denied thrashing around, and she stated she did not think her brother woke up during the incident.

She testified that her vagina bled after this happened and that she was seen at the hospital.[1] She claimed, however, that she did not tell anyone of the abuse right away because she was scared Artero would hurt her, but she eventually told her school counselor, Ms. Peters.[2]

Karen Blackstone, a forensic interviewer with the Children's Safety Center in Springdale, Arkansas, testified regarding the process and procedures used in interviewing children and the type and specificity of disclosures based on the age and maturity of the children interviewed. She also testified regarding the stages of disclosure and the reasons a child might delay disclosure. Blackstone had not interviewed MV specifically, so her observations were general rather than specific.

Artero's counsel objected to Blackstone's testimony, claiming she lacked the requisite qualifications to provide expert testimony. When questioned regarding her qualifications, Blackstone testified that she has a bachelor's degree with a major in social work as well as continuing education and teaching hours. She had also received specialized training in conducting forensic interviews with children. That specialized training included developmental considerations when conducting interviews with children, how children develop their language, "socialized training" on the dynamics of sexual abuse, the lay

---

[1]Her mother confirmed this. Her mother testified that in December 2017, she took MV to the hospital because of vaginal bleeding. MV was diagnosed with a urinary tract infection. Records of the hospital visit were introduced into evidence.

[2]Ms. Peters testified and confirmed that MV reported the abuse to her.

disclosure, the process of disclosure, and child sexual-abuse dynamics. She further stated that she has twenty years of experience as a forensic interviewer and had conducted over four thousand interviews. She had also been previously recognized in Arkansas courts as an expert in forensic interviewing, delayed disclosure, the dynamics of sexual abuse, and in Child First, which is a specialized training for professionals who conduct forensic interviews with children when there is an allegation of abuse.[3] She does not, however, have any advanced degree nor is she a licensed counselor. She has also not written any peer-reviewed articles on delayed disclosure or otherwise.

After hearing her qualifications and considering the arguments of counsel, the court qualified Blackstone as an expert in the dynamics of sexual abuse, forensic interviewing, and delayed disclosures and allowed her to testify to the above.

Investigator Alora Perry with the Crimes against Children Division of the Arkansas State Police testified that she had been employed by the Arkansas State Police for a year and ten months. In that capacity, she had personally conducted roughly 150 forensic interviews a year. Relevant to this case, she testified without objection regarding her investigation and the subsequent "true" finding for sexual abuse relating to MV.

Sergeant Jay Baker, a detective in the Criminal Investigation Division, testified that he was assigned the Artero case after a report of possible sexual abuse had been made to the

---

[3]She testified that she had been qualified as an expert at least four times the previous year.

child-abuse hotline. He testified regarding his investigation into the matter as well as the percentage of cases he dealt with that involved delayed disclosure[4]—approximately 70–75 percent. He was questioned about his interview of MV's mother as well as Angie Mejia's interview[5] of MV. Mejia's interview produced some contradictory and conflicting information from MV regarding the facts surrounding the alleged abuse.

When the State rested, Artero moved, in part, for a directed verdict as to the sentencing enhancement, arguing that the State had failed to prove that the act was committed in the presence of a child as that phrase is contemplated by the statute. He noted that MV's brother was asleep and thus was not aware of the events in question. Because the state did not prove that the child was aware of, was observing, or was hearing the crime, the enhancement did not apply. The court denied his motion.

The defense then called MV's uncle to testify. The uncle lived with his parents at the time of the alleged incident. He confirmed that MV and her brother spent the night at their house on occasion; that they sometimes slept in his parents' bed; and that his parents would sometimes sleep in the same bed with them. However, he denied that he ever saw Artero go into the bedroom while MV was sleeping in there, either alone or with her brother. He stated he would have known because he always stayed up late playing on his Xbox.

---

[4]He testified that he considered delayed disclosure to be disclosure that occurred a month or more after the event.

[5]Angie Mejia is a child interviewer at Hamilton House, a child-advocacy center.

After the uncle's testimony, Artero rested and renewed his motion for directed verdict. The court again denied it. The matter was submitted to the jury, which returned a guilty verdict on the sexual-assault charge and found beyond a reasonable doubt that the sexual assault was committed in the presence of a child. Artero was sentenced to twenty years in the Arkansas Division of Correction for sexual assault with a consecutive seven-year sentencing enhancement for the offense being committed in the presence of a child. He appealed.

On appeal, Artero argues the circuit court erred in allowing Karen Blackstone to give expert testimony on the subject of delayed disclosure, claiming she lacked the requisite credentials to provide this testimony. He further argues that the circuit court erred in denying his directed-verdict motion on the State's request for an enhanced sentence because MV's brother was not awake during the commission of the crime.

I. *Expert Witness Qualifications*

Artero argues first that Karen Blackstone should not have been qualified as an expert witness on the issue of delayed disclosure. He claims that she lacked counseling licensure or any psychology- or psychiatry-based credentials or education. As such, she should not have been allowed to opine about the human psyche. Nor was the fact that she had been previously qualified as an expert on the subject in other trials definitive as to whether she "was actually qualified as an expert."

Our jurisprudence on the qualification of expert witnesses is clear: such decisions fall solely within the sound discretion of the circuit court. *Nelson v. State*, 2024 Ark. 24, 683

S.W.3d 177. Thus, we will not reverse a circuit court's decision on who qualifies as an expert absent a clear abuse of that discretion. *Id.* at 20, 683 S.W.3d at 193. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.* at 16, 683 S.W.3d at 191. The circuit court in this matter acted well within its discretion and without error.

To determine whether one qualifies as an expert, a circuit court must weigh whether the witness is qualified as an expert by the witness's "knowledge, skill, experience, training, or education," and once reconciled, the witness "may testify thereto in the form of an opinion or otherwise." *Nelson*, 2024 Ark. 24, at 20, 683 S.W.3d at 193. Ultimately, circuit courts are responsible for determining, on the basis of the witness's qualification, whether the witness has "knowledge of a subject at hand which is beyond that of ordinary persons." *Id*. Unless the person is clearly lacking in training and experience, the decided tendency is to permit the fact-finder to hear the testimony of someone having superior knowledge in a given field. *Raglon v. State*, 2017 Ark. App. 267, 522 S.W.3d 814 (citing *Graftenreed v. Seabaugh*, 100 Ark. App. 364, 372, 268 S.W.3d 905, 914 (2007)). Absolute expertise concerning a particular subject is not required to qualify a witness as an expert. *Id.* In fact, Arkansas Rule of Evidence 702 expressly recognizes that an expert's testimony may be based on experience in addition to knowledge and training. *Id.*

Here, Blackstone has a bachelor's degree with a major in social work, has completed continuing education and teaching hours, and has received specialized training in

7

conducting forensic interviews with children. Her specialized training included developmental considerations when conducting interviews with children, how children develop their language, "socialized training" on the dynamics of sexual abuse, the lay disclosure, the process of disclosure, and child sexual-abuse dynamics. Additionally, she has twenty years of experience as a forensic interviewer and has conducted over four thousand interviews. And while she does not have any advanced degrees nor has she written any peer-reviewed articles on delayed disclosure, she is not clearly lacking in either training or experience. Thus, it was not an abuse of discretion for the circuit court to qualify Blackstone as an expert witness.

Furthermore, to the extent Artero argues that Blackstone's testimony was inadmissible because it might tend to bolster MV's testimony or improperly profile Artero as an offender, he did not make those arguments below. It is our longstanding rule that we will not consider arguments, even constitutional arguments, raised for the first time on appeal. *Goodrum v. State*, 2025 Ark. 41.

## II. *Sentencing Enhancement*

Artero next argues that the circuit court erred in denying his directed-verdict motion on the State's request for an enhanced sentence because the State failed to prove beyond a reasonable doubt that MV's brother was awake during the commission of the alleged assault. We need not reach the merits of his argument, however, because the State has conceded that Arkansas Code Annotated section 5-4-702(a)(7) was not in effect when the offense was committed; thus, imposition of the sentencing enhancement constitutes an illegal sentence.

An illegal sentence is one that is illegal on its face. *Jackson v. State*, 2018 Ark. 209, 549 S.W.3d 346. A sentence is illegal on its face when it is void because it is beyond the circuit court's authority to impose and gives rise to a question of subject-matter jurisdiction. *Id.* The circuit court here clearly lacked the authority to impose a sentence pursuant to section 5-4-702 for having committed the crime in the presence of a child.

It is a well-established rule that a sentence imposed must be in accordance with the statutes in effect on the date of the crime. *State v. Ross*, 344 Ark. 364, 367, 39 S.W.3d 789, 791 (2001). The crime in this case occurred in 2017. At that time, second-degree sexual assault was not an offense subject to enhancement under the statute. The subsequent amendment, which added second-degree sexual assault to those crimes subject to enhancement, did not become effective until July 24, 2019. *See* Act 324 of 2019, § 1(a)(7); Op. Ark. Att'y Gen. No. 034 (2019). Thus, the circuit court was without authority to impose it.

We may address an illegal sentence sua sponte because void or illegal sentences are matters of subject-matter jurisdiction, and we review them even if they are not raised on appeal. *Willingham v. State*, 2021 Ark. 177, 631 S.W.3d 558; *Young v. State*, 2023 Ark. App. 416.[6] We, therefore, reverse Artero's sentence under the sentencing enhancement and remand for the trial court to enter an amended sentencing order reflecting same.

---

[6]We recognize that Artero did not raise the illegal-sentencing issue in his opening brief and that there is conflicting Arkansas Supreme Court caselaw holding that, in other than life-imprisonment or death-sentence cases, the court will not consider an illegal-sentence question on appeal unless the appellant has raised it. *See Hayes v. State*, 2020 Ark.

9

For the foregoing reasons, we affirm in part and reverse and remand in part to correct an illegal sentence.

Affirmed in part; reversed and remanded in part to correct an illegal sentence.

GLADWIN and WOOD, JJ., agree.

*Jimmie Carl Bush*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

---

297; *Bilderback v. State*, 319 Ark. 643, 893 S.W.2d 780 (1995). The majority of recent Arkansas Supreme Court cases, however, have treated an illegal sentence as one of subject-matter jurisdiction that the appellate court can raise sua sponte. *Willingham*, *supra*; *Scherrer v. State*, 2019 Ark. 264, 584 S.W.3d; *Harness v. State*, 352 Ark. 335, 101 S.W.3d 235 (2003). Because the State has conceded error in this matter, we have determined that judicial efficiency and economy require the matter to be corrected on remand rather than requiring a separate petition for postconviction relief to be filed.