Cite as 2019 Ark. App. 526, vacated 2020 Ark. 208

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CV-18-313

| | |
|---|---|
| DOLLAR GENERAL CORPORATION; DOLGENCORP, LLC, D/B/A DOLLAR GENERAL; CADDO TRADING CO., INC.; RODNEY FAGAN; AND JUDY FAGAN <br>        APPELLANTS <br><br> V. <br><br> KAREN RENEE ELDER <br>        APPELLEE | **Opinion Delivered**: November 13, 2019 <br><br> APPEAL FROM THE MONTGOMERY COUNTY CIRCUIT COURT [NO. 49CV-13-30] <br><br> HONORABLE JERRY RYAN, JUDGE <br><br> AFFIRMED |

## RITA W. GRUBER, Chief Judge

This appeal stems from a $700,000 jury verdict in a slip-and-fall case. In June 2010, Karen Elder slipped and fell on the sidewalk in front of Dollar General in Mount Ida, Arkansas. She later sued Dollar General and the owners of the property it leased for negligence. After a highly contentious jury trial, a Montgomery County Circuit Court jury returned a verdict in Elder's favor. Dollar General and the owners of the property it leased appealed, and after due consideration, we affirm.

## I. *Background*

Appellee Karen Elder went to Dollar General to buy milk. It was raining that day, and while running into the store, Elder slipped and fell on the sidewalk. When Elder got up, she walked into Dollar General and notified employee Pamela Bryant about her fall, and an incident report was taken.

Before her fall, Elder had an active lifestyle, and she worked as a registered nurse at a local school. However, she also had some preexisting neck and back pain, and she had visited a chiropractor, Dr. Eric Carson, on occasion since 2004.

In the years that followed her fall, Elder's lifestyle dramatically changed. She no longer was able to maintain the active lifestyle she previously had—including her work as a registered nurse. Elder also sought the care of a chiropractor, a general practitioner, a radiologist, an orthopedic surgeon, a neurologist, and a neurosurgeon. Ultimately, she would undergo shoulder, neck, and back surgeries. She contends that all this medical care was necessitated by her fall.

In June 2013, Elder sued Dollar General Corporation for negligence. Later, Elder filed an amended and substituted complaint against Dollar General Corporation; Dolgencorp, LLC, d/b/a Dollar General; Miners Village C-Stop, LLC; Caddo Trading Co., Inc.; Rodney Fagan; and Judy Fagan. For practical purposes, Dollar General Corporation and Dolgencorp, LLC (collectively referred to as Dollar General), are corporate entities that own the Dollar General store where the fall occurred. Caddo Trading Co., Inc.; Rodney Fagan; and Judy Fagan (collectively referred to as the Landlords) represent the owners of the land the Dollar General occupied.[1] Each of these defendants employed the same counsel and mounted a united defense.

In her amended complaint, Elder alleged she was a business invitee on the premises and sued for negligence asserting that her fall was the proximate cause of severe injuries to

_____

[1]Miners Village C-Stop, LLC, is no longer a party to this action because Elder dismissed her claims against it without prejudice in a pretrial order. *See Driggers v. Locke*, 323 Ark. 63, 913 S.W.2d 269 (1996).

2

her head, neck, and back that required three surgeries and would require treatment for the rest of her life. Elder sought damages, lost wages, and future medical expenses relating to her injuries. Dollar General and the Landlords answered, denying liability.

Before trial, Dollar General and the Landlords filed a motion in limine seeking to exclude certain evidence. Specifically, they sought to prevent Elder from providing testimony regarding the medical necessity of her treatments. They also sought to prevent Dr. Carson from offering an opinion on whether her slip and fall caused her need for treatment—including surgeries—from medical doctors. They sought to exclude Dr. Carson's testimony because of what they perceived as a change in course by Elder. Eighteen days before the trial was scheduled to begin, Elder supplemented her discovery responses and notified Dollar General and the Landlords that Dr. Carson would provide his opinion as to the cause of Elder's neck, back, and shoulder injuries as a result of the fall; the reasonableness and necessity of her medical bills; and the permanency of her injuries. This contradicted Dr. Carson's deposition testimony wherein he stated that he did not have an opinion regarding the injuries to Elder's shoulders or nerves as well as his testimony that with the exception of the surgeries Elder underwent for the discectomy and fusion, he had no opinion as to the reasonableness or necessity of any of the other surgeries Elder has had. The circuit court denied the motion in limine.

A jury trial was held over the course of four days in July 2017. The primary issues were whether the slip and fall was the fault of Dollar General and the Landlords and whether that slip and fall caused the need for all of Elder's subsequent medical treatment.

To establish that her fall was Dollar General's and the Landlords' fault, Elder presented testimony from Pamela Bryant and Derek Jennings. Bryant, now a former employee of Dollar General, testified that she had seen "about four other people" fall where Elder fell and that she had reported those falls to several Dollar General district managers and to landlord Rodney Fagan. Bryant attested that Fagan told her it would be taken care of. She further explained that there was usually a mat outside Dollar General's entrance. Jennings testified as a safety expert who performed slip-resistance testing on the concrete where Elder fell. Jennings stated that, in his expert opinion, the area where Elder fell was unreasonably dangerous. Both Jennings and Bryant described the concrete outside Dollar General as having a section of smooth, finished concrete that was more slippery than the surrounding concrete.

Elder sought to establish causation through the testimony of Dr. Carson and herself. Over the objections of Dollar General and the Landlords, Elder testified regarding the medical necessity of her treatments that occurred after her fall. Elder also sought to provide causation testimony through Dr. Carson. Specifically, she intended for Dr. Carson to testify regarding the necessity of her medical treatments and that they were causally related to her fall. Dr. Carson's qualifications to provide this testimony were sharply disputed.

When Dr. Carson's testimony began, Dollar General and the Landlords renewed their objections. The circuit court allowed counsel for Dollar General and the Landlords to voir dire Dr. Carson regarding his qualifications outside the presence of the jury. During voir dire, Dr. Carson explained his educational and practical background in the areas of chiropractic, neurology, and orthopedics. The circuit court ultimately ruled that Dr. Carson

was qualified to give expert testimony relating to whether Elder's fall caused her need for medical care, including shoulder, neck, and back surgeries. Thereafter, counsel for Dollar General and the Landlords requested a continuance, but the circuit court denied the request, and the trial resumed.

Dr. Carson then testified before the jury. He explained that he had been Elder's treating chiropractor since 2004. He opined that despite an occasional acute injury, there was no indication that she would have needed treatment beyond chiropractic care before the 2010 fall. Thereafter, he testified that it was his expert opinion that the fall caused her need for medical care, including shoulder, neck, and back surgeries. Dollar General and the Landlords chose not to cross-examine Dr. Carson.

At the close of Elder's case-in-chief, Dollar General and the Landlords moved for a directed verdict. They argued that a directed verdict should be granted because Elder failed to present substantial evidence that the sidewalk she slipped and fell on was unreasonably dangerous. They further claimed that a directed verdict in favor of the Landlords should be granted because there was no evidence that the Landlords had failed to comply with any of their duties required by the lease with Dollar General. The circuit court denied the directed-verdict motion.

For their defense, Dollar General and the Landlords presented testimony from Dr. Owen Kelly and Dr. Alonzo Burba. Dr. Kelly is an orthopedic surgeon who testified that Elder's surgery was the result of longstanding conditions and was not caused by the fall. Dr. Burba is a neurologist who testified that he evaluated Elder and could not say within a reasonable degree of medical certainty what caused Elder's injuries after the fall. At the

conclusion of Dr. Burba's testimony, Dollar General and the Landlords renewed their motion for a directed verdict, which was again denied.

The case was submitted to the jury on interrogatories, and the jury returned a $700,000 verdict. The jury found that all parties were at fault. It allocated 10 percent fault to Elder. The jury found each of the remaining parties—Dollar General Corporation; Dolgencorp, LLC; Caddo Trading Co., Inc.; and Judy and Rodney Fagan—to be 22.5 percent responsible. The jury verdict was reduced to judgment. Thereafter, Dollar General and the Landlords filed a motion for judgment notwithstanding the verdict and a motion for new trial, which were deemed denied.

Dollar General and the Landlords filed a timely notice of appeal. On appeal, Dollar General and the Landlords contend that the circuit court erred by (1) failing to grant a directed verdict because Elder did not prove that the sidewalk was unreasonably dangerous; (2) failing to grant a directed verdict because Elder did not prove that the Landlords failed to maintain the sidewalk; (3) allowing Dr. Carson to testify as an expert regarding the causal connection between Elder's fall and the treatment provided by medical doctors; and (4) allowing Elder to give causation testimony.

## II. *The Sufficiency of the Evidence*

Dollar General and the Landlords make two arguments challenging the sufficiency of the evidence. They assert that Elder failed to prove that the sidewalk was unreasonably dangerous and that she further failed to prove that the Landlords failed to maintain the sidewalk.

6

Our court reviews the denial of a motion for directed verdict by determining whether the jury's verdict is supported by substantial evidence. *Crawford Cty. v. Jones*, 365 Ark. 585, 232 S.W.3d 433 (2006). Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id*. Our court views the evidence and all reasonable inferences arising therefrom in the light most favorable to Elder—the party on whose behalf judgment was entered. *Ethyl Corp. v. Johnson*, 345 Ark. 476, 49 S.W.3d 644 (2001).

It is undisputed that Elder was an invitee on the premises of Dollar General. In Arkansas, property owners have a duty to exercise ordinary care to maintain premises in a reasonably safe condition for the benefit of invitees. *Dye v. Wal-Mart Stores, Inc.*, 300 Ark. 197, 777 S.W.2d 861 (1989). "Under this rule, the basis of a defendant's liability is superior knowledge of an unreasonable risk of harm of which an invitee, in the exercise of ordinary care, does not or should not know." *Jenkins v. Hestand's Grocery, Inc.*, 320 Ark. 485, 487–88, 898 S.W.2d 30, 31 (1995). The duty applies to defects or conditions such as hidden dangers, traps, snares, pitfalls, and the like, because they are known to the invitor but not known to an invitee and would not be observed by the latter in the exercise of ordinary care. *Id*. at 488, 898 S.W.2d at 31. Conversely, there is no duty to an invitee if a danger is known or obvious. *Kuykendall v. Nugent*, 255 Ark. 945, 504 S.W.2d 344 (1974).

We begin our analysis by acknowledging that there is evidence Dollar General and the Landlords knew the concrete outside the store created a potentially dangerous condition. Pamela Bryant testified that there was usually a mat outside the entrance. She also testified that she had seen "about four other people fall" and had reported the falls to several district

7

managers and landlord Rodney Fagan. Thus, the relevant inquiry is whether that potential danger was known or obvious to one exercising ordinary care.

Dollar General and the Landlords contend Elder failed to meet her burden of proving that the sidewalk was unreasonably dangerous because any potential danger was obvious to one using ordinary care. In support, they emphasize that Elder slipped on a wet sidewalk and contend it is common knowledge that concrete is slippery when wet. This oversimplifies the evidence.

Although it is undisputed that the sidewalk was wet at the time of Elder's fall, the testimony from both Pamela Bryant and Derek Jennings indicated there were two types of concrete outside Dollar General—rough concrete on the left and smooth, finished concrete on the right. Elder alleges she fell on the smooth, finished concrete and that the smooth, finished concrete created an unreasonably dangerous condition when wet.

On this point, Dollar General and the Landlords argue that the area where Elder fell was not unreasonably dangerous because any potential danger caused by the smooth concrete was capable of being determined by visual inspection. Thus, they contend it was not in the nature of a hidden danger, trap, snare, or pitfall and could be observed by an invitee in the exercise of ordinary care. *See Jenkins*, *supra*.

We are not persuaded by this argument. Our court must view the evidence in the light most favorable to Elder. *Ethyl Corp.*, *supra*. In doing so, we note that Elder testified she had visited Dollar General five to ten times and had never noticed what the concrete in front of the store looked like. We further acknowledge that Jennings was qualified as a safety expert in the field of slip-resistance testing. Although Jennings reached his conclusion that

the concrete was slippery based on a visual inspection, his visual inspection was not that of a customer entering a store. Jennings's inspection was specifically focused on whether the sidewalk was dangerous. Moreover, his observation that the sidewalk was dangerous stems from experience and expertise in analyzing the safety of walking surfaces. Thus, viewing the evidence in the light most favorable to Elder, there is substantial evidence that the sidewalk was unreasonably dangerous. We affirm on this point.

Next, the Landlords raise a related issue—whether Elder introduced evidence that they failed to maintain the sidewalk or failed to keep the premises in compliance with the Americans with Disabilities Act. The liability of landlords to invitees is governed by Arkansas Code Annotated section 18-16-110 (Repl. 2015), which provides,

No landlord . . . shall be liable to a[n] . . . invitee for . . . personal injury . . . proximately caused by any defect or disrepair on the premises absent the landlord's:

(1) Agreement supported by consideration or assumption by conduct of a duty to undertake an obligation to maintain or repair the leased premises; and

(2) Failure to perform the agreement or assumed duty in a reasonable manner.

Because of the requirements of this statutory section, it is imperative to review the Landlords' lease with Dollar General. The relevant section of the lease provides:

6. MAINTENANCE. Lessor represents and warrants: (1) the Demised Premises are well built, properly constructed, structurally safe and sound; (2) during the term of this Lease and any renewals hereof, it will so maintain them; and (3) the Demised Premises conform to all applicable requirements of the Americans with Disabilities Act of 1990. Lessor shall maintain at its cost and expense in good condition and shall perform all necessary maintenance, repair, and replacement to the exterior of the premises including . . . all paved areas.

The Landlords assert that Elder did not present evidence tending to show a failure to comply with the Americans with Disabilities Act. Elder does not dispute this. However, the

9

relevant inquiry is whether Elder presented substantial evidence that the Landlords failed to maintain the sidewalk in good condition.

On this issue, Bryant testified that she spoke with Rodney Fagan before Elder's fall and reported that the area of the sidewalk where Elder fell was dangerous. Bryant further testified that Fagan told her it would be taken care of. Because of this testimony, we hold that there was substantial evidence to support the jury's verdict.

### III. *The Causation Testimony*

Dollar General and the Landlords also seek reversal alleging error with regard to the admission of certain testimony pertaining to the cause of Elder's need for medical treatment. They contend it was error to allow Dr. Carson to provide causation testimony on medical treatments outside the field of chiropractic, and they argue that it was error to allow Elder to present her own testimony regarding causation.

We review a circuit court's evidentiary rulings—including whether to admit or refuse expert testimony—for an abuse of discretion. *Hopkins v. Ark. Dep't of Human Servs.*, 79 Ark. App. 1, 83 S.W.3d 418 (2002); *Dye v. Anderson Tully Co.*, 2011 Ark. App. 503, 385 S.W.3d 342. Our court will reverse a circuit court's decision to admit or refuse evidence only when there has been an abuse of discretion and a showing of prejudice. *Graftenreed v. Seabaugh*, 100 Ark. App. 364, 268 S.W.3d 905 (2007). The abuse-of-discretion standard is "a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration." *Lone v. Koch*, 2015 Ark. App. 373, at 4, 467 S.W.3d 152, 155.

## A. Dr. Carson's Testimony

Dollar General and the Landlords make two arguments for reversal relating to Dr. Carson's testimony. They contend the circuit court abused its discretion by denying their motion for continuance and by allowing Dr. Carson to present testimony that Elder's medical treatment was necessitated by the fall.

First, we address the denial of the motion for continuance. The denial of a motion for continuance is within the sound discretion of a circuit court, and that court's decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *Bartelli v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 329, 552 S.W.3d 51.

Dollar General and the Landlords contend that the decision to deny their motion effectively resulted in an ambush. They say that Dr. Carson was allowed to give causation testimony without their having the ability to fully depose him or adequately prepare to cross-examine him. They argue that this was compounded error and that our court must reverse.

We are not persuaded that the circuit court abused its discretion in denying the motion for continuance. The circuit court's remarks from the bench are sufficient for us to reach the conclusion that the circuit court did not act improvidently, thoughtlessly, and without due consideration. *See id*. After hearing arguments from both parties, the court stated that the case had been pending for four years and it was time to get the case to a close. It further stated that to grant a continuance would require the court to impanel a new jury and start the trial anew. The court was unwilling to take such a drastic measure, which is

11

prudent and within its discretion. Accordingly, we affirm the denial of the motion for continuance.

Next, we turn our attention to whether the circuit court abused its discretion by allowing Dr. Carson to testify as an expert as to the cause of Elder's need for certain medical treatments, including three surgeries.

Our law imposes on Elder the burden of establishing a causal nexus between her injuries and Dollar General's and the Landlords' negligence. *Wheeler v. Bennett*, 312 Ark. 411, 849 S.W.2d 952 (1993). Elder sought to establish a causal nexus between her fall and all subsequent medical treatment—including shoulder, neck, and back surgeries—through the testimony of Dr. Carson. Dollar General and the Landlords repeatedly and persistently objected. The crux of their objections was that Dr. Carson, being a chiropractor and not a medical doctor, was not qualified to give these opinions. The circuit court allowed this testimony.

> Arkansas Rule of Evidence 702 governs expert testimony. It provides,
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In evaluating whether one is qualified as an expert, there is "no firm rule . . . which would serve uniformly as a means of measuring the qualifications of an expert . . . but too rigid a standard should be avoided and if some reasonable basis exists from which it can be said the witness has knowledge of the subject beyond that of persons of ordinary knowledge, his

12

evidence is admissible." *Dildine v. Clark Equip. Co.*, 282 Ark. 130, 135, 666 S.W.2d 692, 694 (1984).

Our courts have expounded specifically on a chiropractor's qualifications as an expert medical witness. As a general rule, a chiropractor is competent to testify as an expert medical witness concerning matters within the scope of the profession and the practice of chiropractic. *Hardy v. Bates*, 291 Ark. 606, 727 S.W.2d 373 (1987). A foundation must be laid to show the scope of the chiropractor's field, *id.*, and an expert may not offer opinions that range too far outside his or her area of expertise. *Graftenreed*, 100 Ark. App. 364, 268 S.W.3d 905. Absolute expertise concerning a particular subject is not required to qualify a witness as an expert. *Id.* If some reasonable basis exists demonstrating that a witness has knowledge of a subject beyond that of ordinary knowledge, the evidence is admissible as expert testimony. *Id.*

With these standards in mind, we consider whether the circuit court abused its discretion by allowing Dr. Carson to opine on the cause of Elder's medical treatments, including the three surgeries.

Before permitting Dr. Carson to testify in front of the jury, the circuit court allowed voir dire to determine whether he was qualified. Dr. Carson's voir dire testimony revealed that he has been a licensed chiropractor since 1993 and has treated hundreds of patients who have suffered falls. Dr. Carson explained the correlation between medical school and chiropractic school. He testified that both fields study the human body and that they require many of the same classes. He studied orthopedics, neurology, radiology, and pharmacology in chiropractic school. He further indicated that his education includes 210 hours in the

study of orthopedics—including the study of surgical procedures. He also stated that he has received 320 hours of neurological education and training. Dr. Carson testified that he can make any diagnosis an orthopedist or a neurologist can make. The difference, he explained, is that medical doctors perform surgery to correct problems and chiropractors attempt a physical correction. He further testified that he is familiar with the surgeries Elder had and explained those surgeries.

After voir dire, the circuit court heard argument on Dr. Carson's qualifications. Ultimately, the circuit court found that Dr. Carson was qualified to testify as an expert medical witness. The circuit court relied on Dr. Carson's twenty-four years of experience as well as his testimony that he has training and experience in taking and reading radiographic reports, x-rays, CT scans, and MRI scans. It further found that Dr. Carson's testimony demonstrated he has knowledge, experience, and training with both orthopedic and neurological issues. The circuit court acknowledged that Dr. Carson is not required to have absolute expertise in a particular subject to qualify as an expert witness.

Our question is whether the circuit court abused its discretion when it ruled that Dr. Carson was qualified to give expert testimony that Elder's medical treatment was necessitated by her fall. Caselaw requires that we analyze the foundation that Dr. Carson laid for his testimony. *See Hardy*, *supra*.

Here, Elder laid a foundation that Dr. Carson had extensive schooling on the human body, specifically orthopedic and neurological studies. The testimony further demonstrated that—although Dr. Carson admittedly could not perform surgery—his training and experience gave him the ability to diagnose Elder's need for shoulder, neck, and back

14

surgeries. Dr. Carson's lack of expertise as compared to a surgeon admittedly would require him to defer to Elder's treating physicians or specialists in that area of medicine, but the extent or degree of Dr. Carson's qualifications affects the weight of his testimony not its admissibility. *See Stevens v. Smallman*, 267 Ark. 786, 590 S.W.2d 674 (Ark. App. 1979). Notably, Dollar General and the Landlords chose to forgo cross-examination of Dr. Carson in the presence of the jury. Moreover, our review indicates that the circuit court very thoughtfully considered Dr. Carson's qualifications.

Under these particular facts and with the foundation that Dr. Carson laid regarding his particular level of knowledge of medical diagnoses and procedures, we hold that the circuit court did not abuse its discretion by finding that his opinions may assist the jury in understanding the evidence and allowing him to give causation testimony as to Elder's medical treatments.

## B. Elder's Testimony

For their final argument on appeal, Dollar General and the Landlords contend Elder was not qualified to provide testimony on the necessity of her medical treatment. Our court will not reverse a circuit court's decision to admit this evidence absent an abuse of discretion and a showing of prejudice. *Graftenreed*, *supra*.

There are certain limited circumstances in which a plaintiff is qualified to testify regarding medical necessity, such as when a litigant suffers a specific injury and immediately receives medical treatment for that injury. *See Bell v. Stafford*, 284 Ark. 196, 199, 680 S.W.2d 700, 702 (1984). In this case, Elder received all of her treatments after some time had passed

15

after the fall—in fact, some treatments were years after the fall. Therefore, Elder's testimony, by itself, was insufficient to provide evidence of necessity.

Despite this conclusion, we hold that there has been no reversible error. Our court will not reverse a decision to admit evidence without a showing of prejudice. *Graftenreed*, *supra*. Here, any alleged error is harmless because Elder's testimony was merely cumulative. Dr. Carson also gave his opinion regarding the medical necessity of Elder's treatments.

Affirmed.

VAUGHT, J., agrees.

WHITEAKER, J., concurs.

**PHILLIP T. WHITEAKER, Judge, concurring**. Although I agree with the majority's decision to affirm, I write separately to address concerns I have regarding Dr. Carson's testimony and its implications for future litigation.

I agree that a chiropractor is qualified to give expert medical testimony concerning matters within the scope of his or her profession. *Hardy v. Bates*, 291 Ark. 606, 727 S.W.2d 373 (1987). At trial, Elder offered Dr. Carson as an expert. The circuit court utilized Arkansas Rule of Evidence 702, the litmus test for determining whether one is qualified to offer an expert opinion, and determined that Dr. Carson possessed specialized knowledge that would assist the trier of fact (i.e. the jury) to understand the evidence or determine a fact in issue. I see no abuse of discretion in this decision of the court.

While generally a chiropractor may testify as an expert within the scope of his or her profession, our court has cautioned, however, against allowing a chiropractor to stray too far afield from his or her area of expertise when testifying as an expert medical witness.

16

*Graftenreed v. Seabaugh*, 100 Ark. App. 364, 268 S.W.3d 905 (2008). There is logic to this caution. Clearly, any expert has experience and expertise, but not all experience and expertise are the same.[1] Here, Dr. Carson testified not only to the medical necessity of his chiropractic care but also to the medical necessity of three surgeries performed outside of his chiropractic practice. Did this testimony allow Dr. Carson to stray too far afield of his area of expertise? This is the perplexing question of this appeal. The circuit court said the answer to this question was no. We review that decision under an abuse-of-discretion standard.

The majority opinion holds that the circuit court did not abuse its discretion. Under the narrowly tailored, specific facts of this case, I must concur. At trial, Dr. Carson's experience and expertise underwent rigorous foundational scrutiny. He testified about his studies in the areas of orthopedics, neurology, radiology, and pharmacology. He conceded that there are limitations to his expertise: he is not a medical doctor and has never performed surgery. He also conceded that because of his limitations, he would defer to Elder's treating physicians or a specialist regarding the reasonable necessity of her treatment. The circuit court relied on this extensive testimony and thoughtfully considered whether to allow Dr. Carson to testify as an expert. I cannot say that the court ignored or disregarded Dr. Carson's limitations in reaching its decision. The extent or degree of Dr. Carson's qualifications affects the weight of his testimony, not its admissibility. *See Stevens v. Smallman*, 267 Ark. 786, 590 S.W.2d 674 (1979). Under these facts, it was not an abuse of discretion to conclude that Dr.

---

[1]For example, a lawyer, a trial judge, and an appellate judge all have legal experience, but their experience is not all the same.

Carson's testimony was within the scope of his practice and would assist the trier of fact to understand the evidence or determine a fact in issue. *See Hardy*, *supra*; Ark. R. Evid. 702.

I strongly believe that our holding is nothing more than a standard-of-review decision based on the specific facts presented in this appeal. I caution that our holding does not signify that any chiropractor is qualified under Arkansas Rule of Evidence 702 to testify regarding the necessity of any medical treatment. Our circuit courts have an essential and important role as gatekeepers, which is a valuable function to ensure fair and efficient trials. *See generally Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Accordingly, the decision to allow a witness to testify as an expert must be a case-by-case determination that is largely influenced by the scope of the foundation that is laid for the expert testimony.

For these reasons, I concur.

*Dover Dixon Horne PLLC*, by: *Todd Wooten* and *Carl "Trey" Cooper*, for appellants.

*The Applegate Firm, PLLC*, by: *Kayla M. Applegate* and *Ryan J. Applegate*, for appellee.